UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

HARVEY CONVERY,

          Plaintiff,

vs.                                              Case No. 3:10-cv-1185-J-MCR

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying his application for Social Security benefits. The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, the Commissioner's decision is **AFFIRMED.**

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for Supplemental Security Income ("SSI") on January 25, 2000, alleging he became disabled on September 11, 2005. (Tr. 88-90, 100). The Social Security Administration denied Plaintiff's application initially and upon reconsideration. (Tr. 37-44, 47-49). On January 15, 2009, a hearing was held before an ALJ (Tr. 20-36), who issued a decision on February 5, 2009, finding Plaintiff not disabled. (Tr. 10-19). Plaintiff requested review of the ALJ's decision on February 9, 2009 (Tr. 6), and the Appeals Council denied Plaintiff's request on October 29, 2010.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 14).

(Tr. 1-4). Plaintiff timely filed his Complaint in the U.S. District Court for review of the Commissioner's decision. (Doc. 1).

## II.   NATURE OF DISABILITY CLAIM

### A.   Basis of Claimed Disability

Plaintiff claims to be disabled since September 11, 2005, due to Hepatitis C, depression, fatigue, and illiteracy. (Tr. 104).

### B.   Summary of Evidence Before the ALJ

Plaintiff was 52 years old on the date he filed his application for benefits, which classifies him as a person closely approaching advanced age. See 20 C.F.R. § 416.963(d). Plaintiff has a limited education (Tr. 24, 107) and his past work experience includes carpenter, babysitter, molder, and construction yard laborer (Tr. 25-26, 32, 105, 113-20, 121-26). Plaintiff's medical history is discussed at length in the ALJ's decision and will be summarized herein.

Plaintiff's medical evidence is comprised mostly of consultative examinations obtained in connection with his application for disability and the review of his medical evidence by the state agency physicians.[2]

In February 2007, Dr. Eftim Adhami, M.D. performed a physical examination of Plaintiff (Tr. 204-08). Dr. Adhami noted that Plaintiff had no restrictions in his range of motion and observed that he had no lumbar muscle spasms, full muscle strength in all muscles, normal gait, and normal straight leg raise with discrete left knee pain (Tr. 207-

---

[2] Plaintiff underwent one physical consultative examination (Tr. 204-08) and three mental consultative examinations (Tr. 210-16, 328-56).

07). Dr. Adhami further noted that Plaintiff was able to understand questions and answer appropriately (Tr. 207).

In March 2007, Dr. Louis Legum, Ph.D. evaluated Plaintiff for his mental impairment (Tr. 210-15). Plaintiff reported his daily activities included heating up food, doing laundry, cleaning, shopping, watching television, using the computer, and playing cards with friends (Tr. 211). Dr. Legum administered an intelligence test which yielded an overall IQ score of 63 (Tr. 213). Dr. Legum wrote that the IQ scores were consistent with an individual who was functioning in the mild range of mental retardation. He was diagnosed with a learning disorder, alcohol abuse in partial remission, mild mental retardation, traits of passive/dependent personality disorder and was assigned a GAF of 55 (Tr. 214).[3]

In June 2007, Plaintiff was seen at the Putman Community Medical Center for complaints of back pain (Tr. 210-14, 269, 309-12, 314). In December 2007, results of an x-ray showed that Plaintiff had scoliosis and mild degenerative disc disease in his thoracic spine and mild multilevel disc disease in his lumbar spine (Tr. 270, 320). On June 12, 2007, Dr. Robert Steele, M.D. (a state agency medical expert) reviewed Plaintiff's records and concluded that he was limited to light work (Tr. 244-250).

In October 2008, Dr. William E. Benet, Psy.D. evaluated Plaintiff's mental capabilities (Tr. 328-35). Plaintiff reported that his past work included owning a

---

[3]The Global Assessment of Functioning Scale ("GAF") ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, or unable to care for self). A score between 51 to 60 is defined as manifesting "moderate symptoms" (e.g., flat effect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers).

locksmith business and that he was married for seven years until 1984 (Tr. 332-33). Dr. Benet administered the Minnesota Multiphasic Personality Inventory-2, which Plaintiff was able to complete on his own without assistance, after demonstrating that he could read and understand the test terms (Tr. 333).[4] Dr. Benet completed a medical source statement in which he opined Plaintiff would have marked limitations in his ability to understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions due to severe anxiety, depression and alcohol dependence. Dr. Benet further opined that Plaintiff would have marked limitations in his ability to respond appropriately to usual work situations and to changes in a routine work setting (Tr. 328-330).

In January 2009, Dr. Philip R. Yates, Ph.D. examined Plaintiff and found he had an overall IQ score of 67 with a verbal IQ score of 63 (Tr. 336-41). Dr. Yates classified Plaintiff's intellectual capabilities as being in the mild range of mental retardation (Tr. 340, 341). Additionally, Dr. Yates completed a residual functional capacity assessment in which he concluded that Plaintiff would not be significantly limited in his ability to carry out short and simple instructions (Tr. 343). However, he opined Plaintiff would have moderate limitations in his ability to remember locations and work-like procedures, understand and remember very short and simple instructions and remember and understand very detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, complete a

---

[4] The MMPI-2 is a set of over 500 true false questions that require a minimum reading level of fourth or fifth grade. See MMPI-2 Overview, REGENTS OF THE UNIV. OF MINN., http://www.upress.umn.edu/tests/mmpi2.html.

normal workweek and workday without interruption from psychological based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 343-344).

Dr. Joseph Peterson, Ph.D. reviewed Plaintiff's medical evidence and observed that he lives independently with his brother and/or parents and continues to function adequately with a full range of routine daily activities (Tr. 267). Dr. Peterson opined that Plaintiff would be able to understand, remember, and carry-out short and simple instructions and was able to sustain an ordinary routine (Tr. 266). Dr. Peterson further opined that even though Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace (Tr. 261), he was capable of "sustaining the mental demands of appropriate concentrated task oriented activity" (Tr. 267).[5]

### C. Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. § 416(I). The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 416.920(a)(2)(I). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then he

---

[5] State agency psychologist Dr. Jane Cormier, Ph.D. likewise opined Plaintiff could remember, understand, and carry out very short and simple instructions (Tr. 239) and also noted that Plaintiff would be able to sustain work at a job with routine and repetitive tasks (Tr. 241).

does not have a severe impairment and is not disabled. 20 C.F.R. § 416.920(a)(2)(ii). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926), he is disabled. 20 C.F.R. § 416.920(a)(2)(iii). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 416.920(a)(2)(iv). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 416.920(a)(2)(v). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 12). At step two, the ALJ found Plaintiff suffered from the following severe impairments: borderline intellectual functioning and disorders of the spine. (Tr. 12-13). At step three, the ALJ determined Plaintiff did not have an impairment, or any combination thereof, which met or equaled any of the impairments listed in Appendix 1, Subpart P of the Regulation No. 4. (Tr. 13-14). The ALJ further determined Plaintiff had the residual functional capacity ("RFC")[6]

---

[6] The RFC is the most an individual can do despite the combined effect of all of their credible limitations. 20 C.F.R. § 416.945. The RFC is based on all of the relevant evidence in the case record, and is assessed at step four of the sequential evaluation. Id.

to perform light[7] or medium[8] work, except that Plaintiff is limited to simple tasks and requires a low stress job. (Tr. 14-17).

The ALJ then determined that Plaintiff was unable to perform his past relevant work. (Tr. 17). However, based on testimony from a vocational expert (the "VE"), the ALJ determined that other jobs existed in significant numbers that an individual with Plaintiff's RFC, age, education, and work experience could perform. (Tr. 17-18). Specifically, the ALJ found that Plaintiff could perform other work as a dishwasher, warehouse worker, sandwich maker, ticket taker, and parking lot attendant. (Tr. 18). Therefore, the ALJ found Plaintiff was not under a "disability," as defined in the Social Security Act. (Tr. 18-19).

## III. ANALYSIS

### A. The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of

---

[7]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

[8]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c).

fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### B. Issues on Appeal

Plaintiff raises the following five issues on appeal: (1) whether the ALJ erred in finding Plaintiff's impairments do not meet the requirements of § 12.05C of the Listings of Impairment (Doc. 12, pp. 7-15); (2) whether the ALJ properly considered Dr. Yates' opinions (Id. at pp. 15-18); (3) whether the ALJ properly evaluated Plaintiff's alleged illiteracy (Id. at pp. 18-20); (4) whether the ALJ erred in finding Plaintiff was capable of performing medium work (Id.); and (5) whether the ALJ properly incorporated Plaintiff's

concentration limitations into his RFC assessment and the hypothetical question posed to the VE (Id. at pp. 20-24). The Court will address each of these issues.

> **1. Whether the Commissioner erred in finding Plaintiff's impairments do not meet the requirements of § 12.05C of the Listings of Impairment.**

Plaintiff contends that "the [ALJ] erred in failing to find, as a matter of law, that [Plaintiff] was disabled under § 12.05C of the Listings of Impairment." (Doc. 12, pp. 7-15). The Court disagrees.

Plaintiff bears the burden to prove that he is disabled. 20 C.F.R. § 416.912(a); Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). To establish that he is disabled, Plaintiff must meet the definition of disability, showing that he is unable to do any substantial and gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or last twelve or more continuous months. 20 C.F.R. § 416.905(a). Derived from this definition is the five-step sequential evaluation process which is used to determine whether Plaintiff has met the definition of disability. 20 C.F.R. §§ 416.905, 416.920. At step three of the sequential evaluation process, the adjudicator will assess Plaintiff's impairments to determine if the impairments meet or equal a disorder in the Listing of Impairments. 20 C.F.R. §§ 416.920(d), 416.920a(d)(2). The Listing of Impairments describes impairments that are severe enough to prevent an individual from doing any gainful activity. 20 C.F.R. § 416.925(a). To meet or equal a listed impairment, Plaintiff must provide objective medical findings and other findings to show that his impairment satisfies the severity

criteria described in the relevant listing. 20 C.F.R. §§ 416.925(c)(3), (d), 416.926. An impairment will not meet a listing based on a diagnosis alone. 20 C.F.R. § 416.925(d).

Section 12.05C of the Listings of Impairment applies to mental retardation and is comprised of an introductory paragraph containing a diagnostic description and then four sets of criteria. See 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.00A, 12.05. To meet the requirements of Listing 12.05, a claimant must satisfy the diagnostic description in the introductory paragraph and one of the four sets of criteria (paragraphs A through D). Id. The introductory paragraph requires that a claimant have (1) significantly subaverage general intellectual functioning; (2) deficits in adaptive functioning; and (3) have manifested deficits in adaptive functioning before age twenty-two. See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. The criteria in paragraph C requires a valid IQ score from 60 to 70 and a physical or mental impairment imposing an additional significant work related limitation. See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C. Although a rebuttable presumption exists as to a plaintiff's IQ score remaining relatively constant throughout life, see Hodges v. Barnhart, 276 F.3d 1265, 1286-69 (11th Cir. 2001), if a claimant does not have current deficits in adaptive functioning, he will not meet Listing 12.05. See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A; Pettus v. Astrue, 226 Fed. Appx. 946, 948 (11th Cir. 2007) (recognizing that a claimant must meet the diagnostic description in the introductory paragraph and one of the four sets of criteria to meet Listing 12.05); see also Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) ("[A] valid I.Q. score need not be conclusive of mental

retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior.").

Here, the ALJ found that Plaintiff did not meet § 12.05C of the Listings of Impairment because he did not have a deficit in adaptive functioning. (Tr. 15). Specifically, the ALJ found Plaintiff's adaptive functioning indicated that he functions at a level above what was indicated by his IQ scores because he had maintained employment, had been married, was able to live independently, performs housework, pays bills, and socializes with friends. (Tr. 15-16, 28-29, 140-41, 267). Additionally, Plaintiff owned a business, performed semi-skilled work, and was able to use a computer, shop, cook meals, and take care of his personal needs. (Tr. 27-30, 32, 132-33, 140-41, 211, 332). Because Plaintiff's daily activities and behavior demonstrate that he does not have deficits in adaptive functioning, he does not meet § 12.05C of the Listings of Impairment. See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A; see also Harris v. Comm'r of Soc. Sec., 330 Fed. Appx. 813, 815 (11th Cir. 2009); Garrett v. Astrue, 244 Fed. Appx. 937, 938-39 (11th Cir. 2007).[9]

Plaintiff argues that his work as a carpenter does not qualify as substantial gainful activity and therefore should not have been considered.[10] However, nothing

---

[9]In Harris, the court considered that the plaintiff held several jobs, could dress and bath himself, take care of his personal needs, manage money, read, communicate effectively, and do simple math when finding that he did not have deficits in adaptive functioning. 330 Fed. Appx. at 815. Similarly, in Garrett, the court found that the ALJ's decision that the plaintiff did not have deficits in adaptive functioning was supported by substantial evidence where the plaintiff was able to cook, perform chores, build model cars, attend church, watch television, play cards, and walk in the mall. 244 Fed. Appx. at 939.

[10]Plaintiff bears the burden to prove that his work as a carpenter was not substantial gainful
(continued...)

precludes the ALJ from considering Plaintiff's work history for the purposes of evaluating adaptive functioning.  See Outlaw v. Astrue, 197 Fed. Appx. 825, 827 (11th Cir. 2006) (the ALJ's finding that Plaintiff did not meet Listing 12.05C was supported in part by the plaintiff's long work history in semiskilled positions).  Accordingly, the ALJ properly found that Plaintiff did not suffer deficits in adaptive functioning and substantial evidence supports his decision that Plaintiff was not disabled according to Listing 12.05C.

### 2. Whether the ALJ properly considered Dr. Yates' opinions.

Plaintiff argues that the ALJ erred in his assessment of Dr. Yates' opinions. (Doc. 12, pp. 15-18).  Specifically, Dr. Yates opined Plaintiff would have moderate limitations in his ability to remember locations and work-like procedures, understand and remember very short and simple instructions and remember and understand very detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, complete a normal workweek and workday without interruption from psychological based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods.  (Tr. 343-344).  The Court finds the ALJ properly assessed Dr. Yates' opinion and gave it proper weight to the extent it was consistent with the evidence of record.  See (Tr. 16).

---

[10](...continued)
activity.  See Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991).

The ALJ has discretion to weigh a medical opinion and determine how much weight the opinion should have on his findings. See 20 C.F.R. § 416.927(d); Crawford, 363 F.3d at 1159; Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (citations omitted). Here, the ALJ was not required to accept all of Dr. Yates' findings as some of his findings were unsupported by and inconsistent with other evidence of record. See 20 C.F.R. § 416.927(d)(4); Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). For example, Dr. Yates opined that Plaintiff had a "current history of 1 or more years inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement." (Tr. 356). However, Plaintiff's history showed that he had lived on his own. (Tr. 15). Dr. Yates' opinion is also contradicted by Plaintiff's statements that he was able to take care of his personal needs (Tr. 30, 140-42) and by his step-father's statements that Plaintiff had no problem with personal care, could prepare his own meals, and stays mostly by himself (Tr. 131-32).

Although Dr. Yates opined that Plaintiff was moderately limited in his ability to perform certain work functions, both Drs. Peterson and Cormier opined that despite Plaintiff's limitations, he was capable of engaging in sustained work activity with only a limitation to concentrated task-oriented activity or routine and repetitive tasks. (Tr. 241, 267). They also opined that Plaintiff was not significantly limited in his ability to remember, understand, and carry out simple instructions (Tr. 239, 265).

Accordingly, the Court finds the ALJ's discussion of Dr. Yates' opinion is sufficient to show that he considered all of the aspects of his opinion and properly

exercised his duty to resolve inconsistencies within the evidence. See 20 C.F.R. §§ 416.927(c)(2), (4), 416.929(c)(4).

### 3. Whether the ALJ properly evaluated Plaintiff's alleged illiteracy.

Plaintiff argues that "the [ALJ] erred in failing to make findings of fact as to [his] illiteracy and in issuing a vague functional assessment where a finding of illiteracy and a light functional assessment could result in disability under the Grids (Grid Rule 202.09)." (Doc. 12, pp. 18-20). The Court disagrees.

The regulations define illiteracy as an inability to read or write and require that for a person to be considered illiterate he must be unable to read or write a simple message such as instructions or inventory lists. 20 C.F.R. § 416.964(b)(1). Plaintiff cites to his own statements in support of his argument that he is illiterate. (Doc. 12, p. 19). However, despite Plaintiff's allegations, he was able to complete his own work history and disability reports. (Tr. 109-120, 139-46, 171-73). Plaintiff was also able to complete the Minnesota Multiphasic Personality Inventory-2 without assistance. (Tr. 333).

Moreover, Grid Rule 202.09 only applies to individuals who are illiterate and have no or unskilled work experience.[11] See C.F.R. pt. 404, subpt. P, app. 2 §§ 200.00(a), (d). Therefore, Grid Rule 202.09 does not apply to Plaintiff and the Court finds the ALJ properly evaluated Plaintiff's alleged illiteracy.

---

[11] Plaintiff has semiskilled work experience as babysitter, material handler, lumber nailer, and construction yard laborer. (Tr. 17, 32).

### 4. Whether the ALJ erred in finding Plaintiff was capable of performing medium work.

Plaintiff argues that the ALJ's finding that he can perform medium work is not supported by substantial evidence because the ALJ claims to have given significant weight to Dr. Steele's opinion that Plaintiff is capable of performing light work. (Doc. 12, pp. 18-20). However, light work is subsumed in the definition of medium work and it appears that the ALJ credited the opinion from the perspective that Plaintiff could at least do light work.[12] (Tr. 17).

The Court agrees that the ALJ's decision lacks articulation regarding how he was treating Dr. Steele's opinion; however, this error is harmless because the ALJ offered substantial evidence to support his finding that Plaintiff could perform medium work. See Patterson v. Bowen, 799 F.2d 1455, 1459 (11th Cir.1986) (recognizing remand is inappropriate when the ALJ makes a harmless error). For example, the record shows that Plaintiff had not received significant treatment for physical impairments since his alleged onset date and Plaintiff's most extensive physical examination was unremarkable. (Tr. 15, 207-08). Additionally, Plaintiff's diagnoses from the physical consultative examination were based on his self reporting and, despite complaints of pain, he had no difficulty ambulating. (Tr. 15, 207). Furthermore, the objective testing shows that Plaintiff's degenerative disc disease was relatively mild. (Tr. 12, 270).

---

[12]Although the ALJ stated that Plaintiff can perform light or medium work in his finding, Plaintiff's RFC is actually medium work because it is the most he can do despite his limitations. See 20 C.F.R. § 416.945(a); 20 C.F.R. § 416.967 ("If [a claimant] can do medium work ... he or she can also do sedentary and light work.").

Therefore, the Court finds the ALJ did not err in finding Plaintiff was capable of performing medium work.

> **5. Whether the ALJ properly incorporated Plaintiff's concentration limitations into his RFC assessment and the hypothetical question posed to the VE.**

Plaintiff argues that "the [ALJ] erred in failing to incorporate [Plaintiff's] moderate concentration limitations into the [RFC] assessment or the hypothetical question." (Doc. 12, pp. 20-24). The Court disagrees.

When evaluating a plaintiff's medically determinable mental impairment to assess how it affects his ability to work, the adjudicator uses the special technique or psychiatric review technique ("PRT") set forth in 20 C.F.R. § 416.920a. See SSR 96-8p. The PRT requires the adjudicator to rate the degree of functional limitation in four areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.[13]  20 C.F.R. § 416.920a(c)(3).  The results of the PRT are used at step two of the sequential evaluation process to determine if a plaintiff's mental impairment is severe, 20 C.F.R. § 416.920a(d), and must be taken into account prior to step four when formulating the RFC finding. 20 C.F.R. §§ 416.920a(a)(2), (d)(3); Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011). An ALJ properly accounts for the results of the PRT in the RFC finding (or consequently in a hypothetical to a VE) if the medical evidence demonstrates that

---

[13]Activities of daily living, social functioning, and concentration, persistence, or pace are rated on a scale of none, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). Episodes of decompensation are rated on a scale of none, one or two, three, four or more. Id.

Plaintiff can perform work according to the limitations provided in the RFC finding or the ALJ's hypothetical implicitly accounts for the limitations.  See Winschel, 631 F.3d at 1180.

Here, the ALJ found as part of the PRT that Plaintiff suffered from moderate difficulties in concentration, persistence, or pace.  (Tr. 13-14).  Subsequently, the ALJ limited Plaintiff to simple tasks and low stress jobs.  (Tr. 14, 33).  In making this determination, the ALJ relied on Dr. Peterson's opinion that Plaintiff was capable of "sustaining the mental demands of appropriate concentrated task-oriented activity."  (Tr. 17, 267).  Dr. Peterson also noted that Plaintiff could remember, understand, and carry out very short and simple instructions.  (Tr. 266).  Dr. Cormier likewise opined Plaintiff could remember, understand, and carry out very short and simple instructions (Tr. 239) and noted that Plaintiff would be able to sustain work at a job with routine and repetitive tasks.  (Tr. 241).  Thus, the ALJ properly accounted for Plaintiff's limitations in concentration, persistence, or pace because the medical evidence demonstrates that, even with moderate limitations in concentration, persistence, or pace, Plaintiff is capable of performing simple tasks in low stress jobs without additional limitations.  See Winschel, 631 F.3d at 1180; Jarrett v. Comm'r of Soc. Sec., 2011 WL 1378108, at *2-3 (11th Cir. 2011).

To determine whether Plaintiff could perform other work, the ALJ obtained testimony from a VE.  (Tr. 32-34).  See 20 C.F.R. § 416.960(c).  In his hypothetical posed to the VE, the ALJ asked which jobs would be available for an individual with Plaintiff's characteristics at the medium exertional level, except that the individual could

only perform simple tasks in a low stress work environment. (Tr. 33). In response, the VE testified that Plaintiff could perform work as a dishwasher, warehouse worker, and sandwich maker. (Tr. 18, 34). Therefore, the Court finds substantial evidence supports the ALJ's conclusion that Plaintiff could perform other work and was not disabled. See 20 C.F.R. § 416.920(g).

## IV.     CONCLUSION

Upon due consideration, the Court finds the decision of the Commissioner was decided according to proper legal standards and is supported by substantial evidence. As neither reversal nor remand is warranted in this case, and for the aforementioned reasons, the decision of the ALJ is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida this  9th  day of January, 2012.

*Monte C. Richardson*

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record